**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WHITE PINE INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | 2:23-cv-01707-CB |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| CHASE'S AUTO SALVAGE LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I.  MEMORANDUM**

White Pine Insurance Company and Joseph M. Cox, II ("Cox") have cross-filed Motions

for summary judgment.  The insured is Chase's Auto Salvage, LLC ("Chase Auto"), and Cox

was a passenger of its principal.  White Pine seeks a judicial declaration that its liability to Cox

under the policy is $15,000.  Doc. 38.  Cox seeks a declaration that coverage extends to

$100,000, or even $750,000.  Doc. 37.  (Chase Auto has not actively participated in this

litigation.)

White Pine is correct.  Its Motion for summary judgment will be granted, and Cox's

Motion denied.  The Court will enter a judicial declaration that coverage is limited to $15,000.

The policy's "Occupant Hazard" Endorsement applies.  *See* Doc. 38-3 at ECF-header

pg. 30 of 56.  It is no more or less "hidden" in the policy than the relevant declarations page

(*id.* at 20-21), which is sandwiched between other notices and endorsements.  The declarations

page noted the "Schedule of Forms and Endorsements."  *Id.* at 20.

The endorsement is conspicuously titled and formatted:

## THIS ENDORSEMENT CHANGES **THE** POLICY.  PLEASE READ **IT** CAREFULLY.

# AMENDATORY ENDORSEMENT – OCCUPANT HAZARD

This endorsement modifies insurance provided under the following:
   **AUTO DEALERS COVERAGE FORM**
   **BUSINESS AUTO COVERAGE FORM**
   **MOTOR CARRIER COVERAGE FORM**

The following is added to **SECTION II., C. Limit of Insurance** of the **Business Auto Coverage Form** and the **Motor Carrier Coverage Form** and **SECTION I – COVERED AUTOS COVERAGES, D. Covered Autos Liability Coverage, 5. Limits of Insurance – Covered Autos Liability** and **SECTION II – GENERAL LIABILITY COVERAGES, F. Limits of Insurance – General Liability Coverages** of the Auto Dealers Coverage Form:

   In the event of "bodily injury" sustained by any "passenger" while in, upon, entering, or alighting from an "auto" that is operated by an "insured", the limit of insurance is amended to the compulsory or financial responsibility law limit where the "auto" is principally garaged.

The following is added to **SECTION V. DEFINITIONS** of the **Business Auto Coverage Form**, **Motor Carrier Coverage Form** and **Auto Dealers Coverage Form**:

   "Passenger" means any person that is not an "employee" who is occupying or attempting to occupy an "auto".
   "Passenger" does not include customers of the "insured".

All other terms and conditions of the policy remain unchanged.

*Id.*

Cox's status was that of a passenger.  Although he was a customer of Chase Auto at other times, he was not on the day of the accident.  Chase's principal, Mr. Lazlo, and Cox were headed to a scrap dealer, with Cox intending to look at "quads" for sale.  Doc. 37-1 at ℙ 12 (ECF-header pg. 7 of 26).  There is no suggestion that Chase Auto would purchase a quad and resell it to Cox; its business was separate.  *Id.* (Mr. Lazlo was "look[ing] at some cages" for sale).  Cox's status at the time of the accident is what matters, not whether he was a customer at some other time.  "Customer" is not an ambiguous term, nor is the policy's definition of "passenger."  The endorsement applies, and "the limit of insurance is . . . the compulsory or financial responsibility law limit where the [vehicle was] principally garaged."  *See* Endorsement, *supra*.  It was garaged in Pennsylvania, and the limit is $15,000.

Cox's arguments under the "reasonable expectations" doctrine are unpersuasive. The insurance was secured through a broker, who has not been named as a defendant.  If anyone had a duty to alert Chase Auto of the change in policy, it would have been the broker. "[A]n insurance broker has a duty to affirmatively notify an insured that the policy issued by the insurer does not contain the same coverage provisions that were requested by the insured." Alvord-Polk, Inc. v. Strickler Agency, Inc., 2025 WL 1202017, *3 (Pa. Super. Apr. 24, 2025) (citation to binding Pennsylvania and other authority omitted).

Even had Cox sued the broker, he would fare no better.  The duty relates to "coverage provisions . . . requested by the insured." *Id.*  Cox has introduced *no* evidence that passenger-coverage was requested by or important to Chase Auto.  Only with the benefit of hindsight has the focus settled on this particular aspect.  All of the cases applying the reasonable expectations doctrine are distinguishable—no reasonable expectation has been demonstrated here. Matcon Diamond, Inc. v. Penn Nat'l Ins. Co., 815 A.2d 1109, 1115 (Pa. Super. 2003) (declining to apply the doctrine where the insured "did not specifically request or bargain for any particular" coverage or exclusion and, "[t]hus[,] . . . did not have any particular expectation").[1]

Cox's "Hail Mary" arguments that federal and state regulations required Chase Auto to carry $750,000 coverage are rejected.  As explained by White Pine, the regulations address motor carriers that transport property "for compensation."  *See* Doc. 41 at ECF-header

---

[1]  Counsel should be aware that two of White Pine's arguments in resisting the reasonable expectations doctrine have been rejected by the Court of Appeals for the Third Circuit, specifically:  that the relevant policy provision(s) must be ambiguous; and that the doctrine applies only in non-commercial contexts.  UPMC Health Sys. v. Met. Life Ins. Co., 391 F.3d 497, 502-504 (3d Cir. 2004) ("[w]e have recognized and applied this doctrine in cases where [reasonable] expectations were *in direct conflict* with the unambiguous terms of the policy," and "have predicted that Pennsylvania courts would apply [the] doctrine even where the insured is a sophisticated purchaser of insurance—i.e. *a large commercial enterprise*") (citations and internal quotations omitted, emphasis added).

pgs. 23-26 of 29.  Most commonly, they apply to trucking companies whose primary (or sole)

function is the transportation of goods for remuneration.  No amount of creative citation can

defeat the central premise.  49 C.F.R. §§ 387.1, 387.3 (federal regulations govern "*for-hire*

carriers operating motor vehicles transporting property in interstate . . . *commerce*") (emphasis

added, here and in subsequent parentheticals); 67 Pa. Code § 229.1 (regulating "the interstate

operation of *commercial* motor vehicles," and those "involved in . . . the transportation of

interstate *commerce*"); *id.* at § 229.2. (addressing "*commercial* motor vehicles engaged in

interstate *commerce*," including "common carriers, contract carriers or private carriers . . .

involved in interstate *commerce*") *and id.* at § 229.14(3). (incorporating 49 C.F.R. Part 387);

67 Pa. Code §§ 231.1, 231.2 (containing parallel, materially identical provisions for

"the transportation of <u>intra</u>state *commerce*") (second emphasis added).

   Cox's cherry-picking of a single definition, in 52 Pa. Code § 31.1, cannot alter this

conclusion.  In Pennsylvania, insurance requirements for intrastate carrier services are regulated

by the Public Utility Commission ("PUC").  The PUC requires "common carriers" and "contract

carriers" of property engaging in "intrastate *commerce*" to carry $750,000 for a vehicle the size

involved here.  52 Pa. Code § 32.12(a).  Cox references the *prior* chapter – Chapter 31 –

lasering in on the definition of a "[m]otor common carrier of property."  52 Pa. Code § 31.1.

A motor common carrier of property is "[a] motor common carrier who . . . transports property

other than household goods in use." *Id.* (cleaned up).  Because this (sub) definition does not

specify that the service is for "compensation," Cox asserts, Chase Auto was required to have

$750,000 in coverage (and, White Pine must supply such coverage, because it should have

known it was required).

4

Placing aside that the definition is limited to "this chapter, [31]," the remaining definitions reveal the position to be as outlandish as the proposed outcome. Section 31.1 also defines the phrases, "[c]ommon carrier[s] by motor vehicle" and "[c]ontract carrier[s] by motor vehicle," and any reader anticipating that they contain the words, "for compensation," may collect their prize. The only rational purpose for defining "[m]otor common carrier of property" is to differentiate between the types of material delivered. "Common carriers" and "contract carriers" are defined as entities that "transport household goods in use or property." *Id.* (emphasis added). By excluding "household goods in use" (a separately-defined term of art), "[m]otor common carrier[s] of property" – unsurprisingly – are ones who transport "property, *other than household goods in use*." *Id.* (emphasis added).

Cox's argument also would require the Court, and the insurer, to view Chase Auto as a "common carrier." Doc. 37-3 at 17 (ECF-header pg. 21 of 25). There is no reason to do so. The relevant cross-references in Title 52 point to the definition of "common carrier" in Title 66, Pennsylvania Statute Section 102. Under it, a common carrier is:

> Any [entity] holding out, offering, or undertaking, directly or indirectly, service *for compensation* to the public for the transportation of . . . property.

*Id.* (separate emphases added).

Chase Auto has not been shown to have offered transportation services "for compensation," let alone to have held itself out publicly as a transportation provider. To make matters worse for Cox's position, Section 102 expressly excludes from the definition "transportation of property by the owner to himself, or to purchasers directly from him, in [a] vehicle[] owned and operated by the owner of such property and not otherwise used in transportation of property for compensation for others," *id.* at § 102(3)(v); *and* it exempts

"transportation by towing of wrecked or disabled motor vehicles." *Id.* at § 102(3)(viii).[2]

Cox's counsel have pretzeled the law, causing them to trip on their own reading.

The state and federal regulations regarding <u>inter</u>state transportation are inapplicable, because Cox has not shown Chase Auto to have left the Commonwealth on the day of the accident. That Chase Auto *may* have "broken the plane," on some other occasion, is immaterial. *Cf.* Doc. 37-3 at 20 (ECF-header pg. 24 of 25). Cox's "50 mile radius" theory is speculative, and, in any event unhelpful, because the analysis hinges on the circumstances of the specific accident/loss. Canal Ins. Co. v. Coleman, 625 F.3d 244, 251, 253-54 (5th Cir. 2010) (collecting decisions, including those from three other circuit courts and many trial-courts, including ones from the M.D. Pa.); *accord* Progressive Cas. Ins. Co. v. Hoover, 809 A.2d 353, 357-68 (Pa. 2002) (the applicability of an MCS-90 endorsement, which commonly addresses the $750,000 coverage required under 49 C.F.R. § 387.9, is determined by "the totality of the circumstances surrounding *the shipment*") (emphasis added).

And, finally, even had Cox prevailed on every point above, his request to hold White Pine liable for $750,000 is unsupported in the law. The proposed ruling would result in windfall of coverage, and a shocking level of exposure for White Pine, who did not receive premiums in exchange for the additional coverage. The queasiness resulting from this proposal surely informed Cox's decision to primarily urge for $100,000 in coverage—the policy limit absent the

---

[2] In a stroke of cosmically (comically?) bad luck, towing may include hauling a vehicle on a flatbed truck. *Compare* Doc. 37-1 at ¶ 1 (Cox "was a passenger in a flatbed tow truck, a 2000 Freightliner FL 70") *with* 75 Pa. Cons. Stat. § 4572.1(b)(3) (regulating use of lights for a tow "securely positioned on the flatbed of the tow truck"). And, to close the loop, Pennsylvania's exclusion of the coincidental transportation of owned property is reiterated in the federal regulations. *See* 49 C.F.R. § 390.3T(f)(3) (excepting from regulation "[t]he occasional transportation of personal property by individuals not for compensation nor in the furtherance of a commercial enterprise").

occupant hazard endorsement.  Counsel's intuition was well-founded, and reformation to the

tune of $750,000 in additional coverage is not an outcome recognized under the law.

Illinois Cent. R. Co. v. Dupont, 326 F.3d 665, 668-69 (5th Cir. 2003) (even if the insured was

required to have an MCS–90 endorsement, its failure to obtain one did not make the insurer

liable; "[t]he regulations . . . are directed at the motor carrier, not its insurer," and the regulations

did not "impos[e] a duty on the insurer to make sure that [the] non-exempt motor carrier[] secure

the required insurance"); *accord* Phila. Indem. Ins. Co. v. Transit U, Inc., 550 F.Supp.3d 140,

151 (D. Del. 2021).[3]

   Cox's attempted evasion of the occupant hazard endorsement, and his alternative request

for $750,000 in coverage, lack merit.  The Court, therefore, enters the following:

## II.  ORDER

   White Pine's Motion (**Doc. 38**) for summary judgment is **GRANTED**, Cox's Motion

(**Doc. 37**) is **DENIED** and the Court issues the following judicial **DECLARATION**:

the limit of liability applicable under White Pine commercial auto insurance policy

number WPCS002989 to Cox's claims against Chase Auto for the accident, and all attendant

---

[3]  Cox's citation to Metro Transp. Co. v. North Star Reinsurance Co. is unavailing. *Id.*, 912 F.2d 672 (3d Cir. 1990).  That case involved a taxi company in Chapter 11 bankruptcy, and the issue was whether liability for third-party claims should be borne by the company or by its automobile insurers.  The Third Circuit Court concluded that the insurers were liable, highlighting that a taxi company could not operate in Pennsylvania unless its insurer filed with the PUC a "Form E," "certif[ying] that [the company's] taxi operations had adequate automobile insurance coverage conforming [with] PUC's requirements." *Id.* at 678-79.  Obviously, this case has nothing to do with bankruptcy, and Cox makes no mention of White Pine filing a Form E, or any other document, with the PUC.  No subsequent decision, in any court, has extended the holding in Metro v. North Star to reform an insurance policy to include an an MCS-90-type endorsement, resulting in an additional $735,000 (or $650,000) in coverage.  Such a ruling would reverberate through the insurance industry and bar, and the Court declines counsel's invitation to garner such unwarranted attention.

pleadings, claims and positions in <u>Cox v. Cemex, Inc., et al.</u>, No. 10132-2020 (Ct. Comm. Pls. of

Lawrence County, Pennsylvania), is $15,000.

      IT IS SO ORDERED.


September 17, 2025                                  <u>s/Cathy Bissoon</u>
                                                      Cathy Bissoon
                                                      United States District Judge

cc (via ECF email notification):

All Counsel of Record